Evans v New York City Tr. Auth. (2019 NY Slip Op 07872)





Evans v New York City Tr. Auth.


2019 NY Slip Op 07872


Decided on November 6, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 6, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
BETSY BARROS
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2017-07925
 (Index No. 15934/10)

[*1]Lila Evans, appellant, 
v
New York City Transit Authority, et al., respondents, et al., defendants. APPEAL by the plaintiff, in an action to recover damages for personal injuries, from a judgment of the Supreme Court (Debra Silber, J.), entered in Kings County on June 23, 2017. The judgment, insofar as appealed from, upon a jury verdict, is in favor of the defendants New York City Transit Authority and the Metropolitan Transportation Authority and the plaintiff, in effect, dismissing the complaint insofar as asserted those defendants.


Dell & Dean, PLLC (Mischel & Horn, P.C., New York, NY [Scott T. Horn and Lauren E. Bryant], of counsel), for appellant.
Lawrence Heisler, Brooklyn, NY (Timothy J. O'Shaughnessy of counsel), for respondents.
CONNOLLY, J.
For the reasons that follow, we hold that an appellant need not preserve a contention that a jury verdict was contrary to the weight of the evidence by making a postverdict motion for a new trial. Further, we find that the jury verdict in this case was contrary to the weight of the evidence, entitling the plaintiff to a new trial.
I. Factual and Procedural Background
The plaintiff allegedly was injured when she stepped off a bus owned and operated by the defendants New York City Transit Authority and the Metropolitan Transportation Authority (hereinafter together the defendants) and into a pothole, causing her to fall. The plaintiff commenced this action against the defendants, among others, to recover damages for personal injuries, and the action proceeded to a jury trial.
At trial, the plaintiff testified that at approximately noon on December 17, 2009, she was standing with her nephew at the back of the B25 bus, intending to exit at the bus stop near the intersection of Fulton Street and Brooklyn Avenue. Realizing that the bus had passed the stop, the plaintiff remarked aloud to her nephew that they had missed their stop. The bus traveled another two or three car lengths when the driver stopped the bus to allow the plaintiff and her nephew to exit. A green light on the rear door came on, signaling that the plaintiff could exit the bus through that door. When the doors opened, the plaintiff descended the steps to exit. The plaintiff testified that as she stepped off the bus with her right foot, she felt pain in her leg and began screaming as she fell to the ground. The bus drove away, leaving the plaintiff on the ground. A crowd gathered around the plaintiff as she laid on the ground and continued to scream. The plaintiff testified that her nephew (who did not testify at trial) told her that she had stepped into a pothole. Members of the fire department responded to the scene and placed the plaintiff onto a board, at which point she observed a pothole in the street where she had fallen. The plaintiff was taken to the hospital by ambulance, where she reported that she was injured after stepping off a bus and into a pothole.
During cross-examination, the plaintiff testified that after she fell, she believed one of her legs was still on the step of the bus as it pulled away. The trial court interrupted the cross-examination to ask the plaintiff for clarification and then stated aloud, in front of the jury, "[t]hat's kind of physically impossible." In response to an immediate objection by the plaintiff's counsel, the trial court stated, among other things: "Well, we'll hear from the bus driver. But I don't really think buses are allowed to move, you know - - I don't think you can engage a bus and drive it when the doors are open. But maybe I'm wrong. We'll find out from other people's testimony."
Sophie Forrester, a nonparty witness called by the plaintiff, testified that she was walking down the street when she saw the bus stop in the middle of the block, at a location that was not a designated bus stop. Forrester, who did not know the plaintiff prior to the accident, saw the plaintiff step out of the back of the bus and into a "very large and deep" pothole, where she immediately fell to the ground. Forrester took photographs of the accident scene that were admitted into evidence.
The bus driver, Tavel Hill, was called as a witness for the defendants. He testified that he had been a bus operator for 10 years and an operator on the B25 route on the date of the accident. Hill testified that if a passenger requests to get off the bus between designated stops, the normal practice was to continue on and let the passenger off at the next stop. Hill testified that he was trained to drop passengers off at designated bus stops, except when presented with an unsafe situation, such as an icy condition, or an obstruction, such as a parked car. Hill also testified that when the rear door of the bus is open, an interlock system prevents the bus from moving. Hill had no recollection of a passenger being injured while exiting his bus on the day in question, and only learned about the plaintiff's claim on a later date.
The defendants also called Samer Ayoub, a superintendent of maintenance for New York City Transit buses. Ayoub testified that the bus's interlock system would prevent the bus from [*2]moving if the rear doors were open or obstructed. Ayoub reviewed the maintenance records for the bus in question and found that there were no records mentioning maintenance or repairs to the interlock system.
In summation, the plaintiff's counsel clarified that the plaintiff was "not claiming that [the defendants] closed the door on her and drove off," but rather, that the alleged negligence occurred when the driver "opened the doors in an area where there was a pothole." The Supreme Court instructed the jury, inter alia, that a bus company has a duty to provide passengers with a reasonably safe place to get on and off the bus (see PJI 2:166). The jury returned a verdict finding that the defendants, through the actions of the bus driver, were negligent, but that such negligence was not a substantial factor in causing the accident.
After the verdict was announced, the plaintiff made no oral motion to set aside the verdict, but her attorney requested an extension of time to file a written posttrial motion. While the Supreme Court granted the plaintiff's request for an extension, the plaintiff never filed a posttrial motion to set aside the verdict.
A judgment was entered in favor of, among others, the defendants, in effect, dismissing the complaint insofar as asserted against them.
The plaintiff appeals, arguing, inter alia, that she is entitled to a new trial based upon two separate grounds—the verdict was contrary to the weight of the evidence or, alternatively, the trial court's comments during the plaintiff's testimony deprived her of a fair trial.
II. Weight of the Evidence
A. Preservation
Before considering the merits of the plaintiff's weight of the evidence argument, we take this opportunity to clarify whether an appellant must preserve a weight of the evidence argument for appellate review by making a posttrial motion to set aside the verdict. For the reasons that follow, we hold that there is no preservation requirement for this Court to review a weight of the evidence contention.
In cases dating back to the nineteenth century, the Court of Appeals has recognized that the Appellate Division has the authority to review a verdict based upon the weight of the evidence, without any requirement that the issue be preserved. In Schwinger v Raymond (105 NY 648, 649 [1887]), the Court of Appeals stated that "[t]he court below had the power to set aside the verdict as contrary to the evidence without any exception, but in this court we can consider no objection which is not based upon some exception taken at the trial" (emphasis added). Similarly, in Middleton v Whitridge (213 NY 499, 505 [1915]), the Court of Appeals held that it is "incumbent on the Appellate Divisions to review the findings of fact in all cases" (emphasis added).
Prior Appellate Division jurisprudence held that a weight of the evidence argument need not be preserved by a motion for a new trial (see Bintz v Hornell, 268 App Div 742, 747 [4th Dept 1945] ["We may reverse or modify a judgment although no motion for a new trial was made"], affd 295 NY 628; Miller v Brooklyn Hgts. R.R. Co., 173 App Div 910, 910-911 [2d Dept 1916] ["Although the defendant has appealed merely from the judgment, without any motion for a new trial, this court since the 1914 amendment of Code of Civil Procedure, section 1346, has power to review the facts"]; see also Mosler Safe Co. v Brenner, 100 Misc 107, 111 [App Term, 1st Dept 1917] ["That the General Term and the Appellate Division have always had the power to reverse a judgment of the Supreme Court as being contrary to the evidence regardless of whether or not a motion was made to nonsuit the plaintiff, we think there can be no doubt"]).
Miller v Brooklyn Hgts. R.R. Co., a 1916 decision of this Court, relied upon section 1346 of the Code of Civil Procedure for the proposition that the Appellate Division has the power to exercise its factual review power on an appeal from a judgment where no motion for a new trial was made (173 App Div 910). That statute, as amended in 1914, provided that on an appeal to the Appellate Division from a final judgment, "[w]hen the judgment was rendered upon the verdict of a jury, the appeal may be taken upon questions of law, or upon the facts, or upon both" (emphasis added). Likewise, CPLR 5501, the current statute governing this Court's scope of review on an appeal from [*3]a final judgment, imbues this Court with the same broad authority to review the facts: "The appellate division shall review questions of law and questions of fact on an appeal from a judgment" (CPLR 5501[c] [emphasis added]).
A further source of this Court's authority to review the weight of the evidence absent a motion to set aside the verdict comes from CPLR 4404(a), the provision authorizing postverdict motions for a new trial. CPLR 4404(a) provides, in pertinent part: "After a trial of a cause of action or issue triable of right by a jury, upon the motion of any party or on its own initiative, the court may . . . order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence" (emphasis added). Insofar as the trial court is permitted to order a new trial "on its own initiative" (CPLR 4404[a]), and "the power of the Appellate Division . . . is as broad as that of the trial court" (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499), this Court also possesses the power to order a new trial where the appellant made no motion for that relief in the trial court.
Despite the foregoing, in Condor v City of New York (292 AD2d 332, 332 [2d Dept 2002]), this Court held that a defendant's contention that a verdict was contrary to the weight of the evidence was "unpreserved for appellate review, as it is raised for the first time on appeal." In support of that proposition, Condor cited to Singh v Eisen (260 AD2d 363 [2d Dept 1999]), a case that involved an issue of preservation, but which did not involve a contention that a verdict was contrary to the weight of the evidence.[FN1]
Additionally, in Bendersky v M & O Enters. Corp. (299 AD2d 434 [2d Dept 2002]), this Court signaled the existence of a preservation requirement for weight of the evidence contentions, when it held that the appellants' "claim that the verdict was against the weight of the evidence was
preserved and meritorious" (id. at 435; emphasis added).
Condor and Bendersky cannot be reconciled with the extensive authority, discussed above, that recognizes the Appellate Division's power to consider a weight of the evidence argument without any need for preservation. Since Condor and Bendersky were decided, they have never been cited by this Court for the proposition that a weight of the evidence argument must be preserved. Accordingly, Condor and Bendersky are aberrations in this Court's jurisprudence and we, therefore, hold that they should no longer be followed for the proposition that a weight of the evidence argument must be preserved.
We are cognizant that case law from other Departments of the Appellate Division has imposed a preservation requirement for weight of the evidence review (see Creamer v Amsterdam High School, 277 AD2d 647, 651 [3d Dept 2000]; see also Cyrus v Wal-Mart Stores E., LP, 160 AD3d 1487, 1488 [4th Dept 2018]; Homan v Herzig, 55 AD3d 1413, 1413 [4th Dept 2008]; Nitzke v Loveland, 188 AD2d 1058, 1059 [4th Dept 1992]). Nevertheless, for the reasons articulated herein, we respectfully disagree with those decisions.
Accordingly, having concluded that there is no preservation requirement for weight of the evidence review, we now consider the plaintiff's contention that the verdict was contrary to the weight of the evidence.
B. The Verdict Was Contrary to the Weight of the Evidence
A verdict in favor of a defendant should not be set aside as contrary to the weight of the evidence unless the evidence so preponderated in favor of the plaintiff that the verdict could not have [*4]been reached on any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746). "[P]articular deference has traditionally been accorded to jury verdicts in favor of defendants in tort cases because the clash of factual contentions is often sharper and simpler in those matters and the jury need not find that a defendant has prevailed by a preponderance of the evidence but rather may simply conclude that the plaintiff has failed to meet the burden of proof requisite of establishing the defendant's culpability" (Nicastro v Park, 113 AD2d 129, 134; see Thompson v East Coast 6, LLC, 153 AD3d 1296). "It is for the jury to make determinations as to the credibility of the witnesses, and deference in this regard is accorded to the jury, which had the opportunity to see and hear the witnesses" (Scarpulla v Williams, 147 AD3d 1101, 1102; see Russo v Mignola, 142 AD3d 1064, 1065-1066).
The plaintiff contends that the jury's finding that the defendants were negligent, but that such negligence was not a substantial factor in causing the accident, was contrary to the weight of the evidence. "A jury's finding that a party was at fault but that such fault was not a proximate cause of the accident is inconsistent and against the weight of the evidence only when the issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause" (Garrett v Manaser, 8 AD3d 616, 617; see Wilson v Philie, 107 AD3d 700, 702; Bennett v City of New York, 303 AD2d 614, 614-615; Schaefer v Guddemi, 182 AD2d 808, 809).
Here, it was logically impossible for the jury to conclude that Hill was negligent in failing to provide the plaintiff with a safe location to alight from the bus but that such negligence was not a proximate cause of the accident. It was uncontradicted that the plaintiff stepped directly from the bus into the pothole, and immediately fell to the ground. The unbroken chain of events was witnessed by Forrester, a neutral witness with no relationship or prior affiliation with the parties, and corroborated by photographs of the scene taken immediately after the accident occurred. Assuming, as the jury found, that Hill was negligent, it is logically impossible under the circumstances to find that such negligence was not a substantial factor in causing the accident. Under these circumstances, the issues of reasonable care and proximate cause were so inextricably interwoven that the jury's verdict could not have been reached upon any fair interpretation of the evidence (see Alexander v City of New York, 21 AD3d 389, 389-390). Accordingly, the plaintiff is entitled to a new trial.
III. Remaining Contentions
In light of our determination, the plaintiff's remaining contentions have been rendered academic. However, we note that it was inappropriate for the trial court to interject during the plaintiff's testimony and, in the jury's presence, state its opinion regarding the plausibility of the plaintiff's testimony. "A trial justice must maintain an atmosphere of impartiality" (Porcelli v Northern Westchester Hosp. Ctr., 110 AD3d 703, 706). "[A trial justice] is not reduced to such constraint that he [or she] may not make remarks on occurrences during the trial" (Buckley v 2570 Broadway Corp., 12 AD2d 473, 473). However, "[t]he [trial justice] should . . . at all times maintain an impartial attitude and exercise a high degree of patience and forbearance" (id.). Since we are remitting the matter to the Supreme Court for a new trial on the independent ground that the verdict was contrary to the weight of the evidence, we need not determine whether the court's remarks were so prejudicial as to constitute a basis for reversal.
Accordingly, the judgment is reversed insofar as appealed from, on the facts, the complaint is reinstated insofar as asserted against the defendants New York City Transit Authority and the Metropolitan Transportation Authority, and the matter is remitted to the Supreme Court, Kings County, for a new trial.



LEVENTHAL, J.P., BARROS and IANNACCI, JJ., concur.
ORDERED that the judgment is reversed insofar as appealed from, on the facts, with costs, the complaint is reinstated insofar as asserted against the defendants New York City Transit Authority and the Metropolitan Transportation Authority, and the matter is remitted to the Supreme Court, Kings County, for a new trial.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:Despite finding that the weight of the evidence issue was unpreserved, the Condor Court nevertheless considered the contention "[i]n any event," and found it to be without merit (292 AD2d at 332). This Court is, of course, empowered to review unpreserved arguments in civil cases in the interest of justice (see Merrill v Albany Med. Ctr. Hosp., 71 NY2d 990, 991 ["While the Appellate Division has jurisdiction to address unpreserved issues in the interest of justice, the Court of Appeals may not address such issues in the absence of objection in the trial court."]; see also Martin v Cohoes, 37 NY2d 162, 165).